NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANNIE J. WANNAMAKER,**<br><br>    **Plaintiff,**<br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>    **Defendant.** | 03-CV-6201 (WJM)<br><br><br>**OPINION** |

Abraham S. Alter
Langton & Alter
P.O. Box 1798
2096 St. Georges Avenue
Rahway, NJ 07065
*Attorney for Plaintiff*

Christopher J. Christie, U.S. Attorney
Clementine Redwine, Special Asst. U.S. Attorney
District of New Jersey
970 Broad Street, Suite 700
Newark, New Jersey 07102
*Attorneys for Defendant*

**MARTINI, U.S.D.J.:**

### I.   INTRODUCTION

Plaintiff Annie J. Wannamaker brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act (hereinafter "the Act"), seeking review of the final determination by the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (hereinafter "DIB"). Plaintiff filed an application for such benefits

on December 28, 2000.  (Tr. at 62-64.)[1]  The application was denied initially and again on reconsideration.  (*Id*. at 32-34, 40-42.)   In a written opinion issued January 16, 2003, Administrative Law Judge Ralph J. Muehlig (hereinafter "ALJ") concluded that Plaintiff was not entitled to benefits because she did not qualify as "disabled" within the meaning of the Act.  (*Id*. at 14-24.)  Upon the Appeals Council's denial of Plaintiff's request for review on June 2, 2003 (*id*. at 9-10), the ALJ's decision became final.

Plaintiff contends that the ALJ erred by failing to explain his analysis of the substantial evidence in support of his decision, to accord sufficient weight to Plaintiff's subjective complaints of pain, and to consult a vocational expert or a treatise such as the *Dictionary of Occupational Titles* in determining Plaintiff's residual functional capacity.  (Plaintiff's Brief at 9, 18.)  For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on November 30, 1941 (Tr. at 62) and graduated from high school in 1960.  (*Id*. at 96.)  At the time of the onset of her alleged disability, she was fifty-nine years old. Plaintiff had previously worked as an administrative assistant for seven years at a music company, and before that as an accounts-receivable clerk for one year at a beeper company.  (*Id*. at 81, 384-385.)  Plaintiff claims that she has been prevented from working since August 4, 2000, owing to pain in her back, neck, left shoulder, and left hand.  (*Id*. at 90.)

The ALJ considered and discussed all relevant medical history beginning in November 1996 when Plaintiff underwent an MRI scan of her spine that revealed a herniated disc at L5-S1. (*Id*. at 282.)  Another MRI was performed on Plaintiff in November 1998, which revealed some

---

[1] "Tr." denotes the administrative record.

degeneration in the L3-L4, L4-L5, and L5-S1 discs. (*Id*. at 198.) The ALJ considered Plaintiff's L5-S1 disc herniation, but discounted its impact since that herniation had been present during the four years of work when she earned her highest annual salaries. (*Id.* at 21, 65.)

Plaintiff was examined by Dr. Rodrigo R. Lim, a doctor at Hudson Neurosciences, P.C., nine times from December 1998 to February 2000. For each exam in 1999 and 2000, Dr. Lim's notes indicate full motor strength and symmetry with no muscle atrophy or fasciculations. (*Id*. at 203, 206, 211, 214, 183, 185, 180, and 187.) During the February 1, 2000 examination, Dr. Lim observed a "[l]eft 4th digit strain [but] [n]o clinical evidence of neurologic dysfunction of the left hand or digit." (*Id*. at 188.) Plaintiff was then examined by a physical therapist at Hudson Physical Therapy Services on January 4, 2000, where she was being treated for "cervical/lumbar disc dsc./herniation/lumbar syndrome." (*Id*. at 179.) This physical therapist initially noted that Plaintiff had limited function in daily-living activities, work activities, and ambulation (*id*. at 179); however, her discharge summary dated July 15, 2000 stated that she had become able to perform all occupational duties and all activities of daily living. (*Id*. at 269.)

On June 15, 2000, Plaintiff underwent an operation on her left shoulder, in which orthopedic surgeon Dr. E. Tolentino performed a decompression procedure releasing constricting tissue of the left median nerve. (*Id*. at 19, 281, 284.) Dr. Tolentino cleared Plaintiff to return to work as of July 31, 2000. (*Id*. at 19, 284.) Soon afterwards, Plaintiff was examined on August 3, 2000 by Dr. G. Munne for complaints of arm numbness and pain. (*Id.* at 311.) Dr. Munne noted that she experienced pain along her left shoulder's range of motion but had good grip, and he recommended further physical therapy. (*Id.*)

Plaintiff was then diagnosed with cataracts in both eyes, and had surgery on her left eye

3

on December 14, 2000. The ALJ noted that five days after the operation her vision was measured as 20/70 in the right eye and 20/40 in the left eye, and she was healing well. (*Id*. at 19, 306.)

In March 2001, Dr. Friedman performed a consultative physical examination of Plaintiff. He noted that she was independent with activities of daily living and ambulation but needed assistance with cooking. (*Id. at* 324.) He also noted that she exhibited full range of motion of the cervical spine, wrists, knees, elbows, and right shoulder. (*Id*. at 323-324.) She was further examined by Dr. Francky Merlin in March 2001. He concluded that while her motor strength was diminished in her nondominant left upper extremity, Plaintiff had no manipulative impairment. He also concluded she could perform all work-related activities, except heavy lifting and carrying, since her medical conditions did not pertain to her dominant right arm. (*Id.*) He further determined that she could sit, stand, walk with an antalgic gait, hear, speak, travel, and handle objects. (*Id*. at 332-334.) Finally, Plaintiff was treated on two occasions for dysphagia by Dr. Hahn, a gastroenterologist, who opined that she could return to her past work as an administrative assistant. (*Id*. at 19, 309.)

The ALJ considered the testimony of both Plaintiff and Dr. Chirls, a board-certified orthopedic surgeon and non-examining medical consultant who had thoroughly reviewed Plaintiff's medical records.[2] (*Id*. at 400.) He discredited Plaintiff's testimony as to her subjective complaints of pain as a result of Plaintiff's alleviation of the pain through the mere use of over-the-counter pain relievers such as Extra Strength Tylenol. The ALJ accorded much weight to Dr.

---

[2] Although Plaintiff asserts that Dr. Chirls is "a maverick, hand-picked orthopedic expert" who has since been discredited (Pl.'s Br. at 9, 12), Plaintiff provides no evidence to support these assertions. Furthermore, the ALJ aptly noted Dr. Chirls's extensive credentials. (Tr. at 51.)

4

Chirls's testimony concerning the clinical insignificance of Plaintiff's post-surgery residual symptomatology in her left shoulder and wrist, and the non-prominence of Plaintiff's left carpal tunnel syndrome. (*Id.* at 21.) Dr. Chirls testified that Plaintiff's left-shoulder rotator cuff muscles show no evidence of atrophy (*id.* at 415), and although her shoulder may have presented impingement syndrome prior to surgery, she would have a full range of motion after surgery. (*Id.* at 417.) He also testified that Plaintiff has an anatomical basis for saying that she has some numbness in her left hand, but has no significant atrophy and has no basis for her alleged inability to straighten out her left fingers and hand because carpal tunnel syndrome does not have that effect. (*Id.* at 418-419.)

After a complete review of the medical history and evidence before him and consideration of the testimony, the ALJ determined that Plaintiff retained the residual functional capacity to perform light work as a result of her ability to sit, stand, or walk for up to six hours during an eight hour workday, and to lift or carry objects weighing up to twenty pounds occasionally and ten pounds frequently. He further concluded that she was restricted in overhead reaching with her left nondominant arm. Relying on Plaintiff's testimony that her past relevant work could be performed at a sedentary exertional level and did not include overhead reaching, the ALJ found that she could perform her past relevant work as an administrative assistant or accounts receivable clerk. (*Id.* at 82-83).

### III.     STANDARD OF REVIEW

An individual is entitled to DIB upon a finding of a disability, which is defined by Title II of the Act as a "'medically determinable basis for an impairment that prevents him from engaging in any "substantial gainful activity" for a statutory twelve-month period.'" *Plummer v.*

*Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988)); 42 U.S.C. § 423(d)(1).  The claimant is "considered unable to engage in any substantial activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'"  *Plummer*, 186 F.3d at 428 (quoting 42 U.S.C. § 423(d)(2)(A)).

  A five-step evaluation process, set forth in 20 C.F.R. § 404.1520, is used to evaluate whether or not an individual is disabled.  *Burnett v. Commissioner of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000).  In step one, the Commissioner determines whether the person is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a).  If a claimant is found to be engaged in substantial activity, the disability claim will be denied.  *Burnett*, 220 F.3d at 118.  In step two, the Commissioner must next determine whether the claimant is suffering from a severe medical impairment.  *Id.* at § 404.1520(c).  If the claimant cannot show his impairment is severe, he is ineligible for disability benefits.  *Id.*  However, if the claimant demonstrates a severe medical impairment, the Commissioner must determine in step three whether the impairment meets or equals an impairment listed by the Commissioner as creating a presumption of disability.  *Id.* at § 404.1520(d).  If the claimant's severe impairment satisfies step three of the analysis, the Commissioner will find the claimant disabled without considering other factors such as age, education, and experience.  *Id.* at § 404.1520(d).  Conversely, if the impairment is not equal to any listing, the Commissioner must proceed to steps four and five.  *Burnett*, 220 F.3d at 118.

In step four, the Commissioner determines if the claimant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(e). The claimant has the burden of demonstrating his or her inability to perform past relevant work. *Burnett*, 220 F.3d at 118 (quoting *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)). If the claimant does not have the capacity to resume his or her past work, the evaluation will continue to the fifth step. Id. at 118. At the fifth step, the burden shifts to the Commissioner to demonstrate the claimant is capable of performing some other available work in the national economy, taking into consideration the claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(f); *Burnett*, 220 F.3d at 118. If the claimant cannot perform other work in the national economy, the Commissioner must grant disability benefits to the claimant.

The district court exercises plenary review over the Commissioner's legal conclusions and is bound by the Commissioner's factual findings that are supported by substantial evidence, *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000), as the court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)). Substantial evidence has been defined as "...such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). For evidence to be deemed substantial, it must consist of "more than a mere scintilla of evidence but less than a preponderance." *Stunkard*, 841 F.2d at 59.

**IV.     DISCUSSION**

In denying Plaintiff's claim, the ALJ applied the first four steps of the sequential process

described above and found that: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of the disability; (2) Plaintiff has an impairment or combination of impairments considered "severe" under 20 C.F.R. § 404.1520(b); (3) the medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. §§ 404.1520(b) and 404, Subpart P, Appendix 1; and (4) Plaintiff's residual functional capacity permits her to perform light work with restricted overhead lifting and does not preclude her from performing her past relevant work as an administrative assistant or accounts receivable clerk.  (Tr. at 22). Because the ALJ found that Plaintiff could perform her past relevant work, he did not proceed to step five to consider whether she could perform other work available in the national economy.

Plaintiff concedes that she does not meet a listing under step three of the sequential process (*id*. at 449), but she appeals the ALJ's findings under step four.  Plaintiff contends that the ALJ's findings were not based on substantial evidence because he failed (1) to adequately explain his reasoning; (2) to consider Plaintiff's subjective complaints of pain; and (3) to call a vocational expert or consult a reference such as the *Dictionary of Occupational Titles* to assess Plaintiff's ability to perform light work.  (Pl.'s Br. at 9, 16, 18.)

A. Whether the ALJ Adequately Explained His Reasoning

Plaintiff relies upon *Burnett v. Commissioner of Soc. Sec.*, 220 F.3d 112 (3d Cir. 2000) in support of her argument that the ALJ  must "recite all of the probative evidence which supports or rejects his findings and provide an articulated basis for accepting or rejecting probative evidence." (Pl.'s Br. at 8.)  *Burnett*, however, merely prohibits the ALJ from making bare conclusory statements when setting forth the reasons for his decision, inasmuch as bare conclusions are beyond judicial review since they neither discuss the evidence nor explain their

reasoning. *Burnett*, 220 F.3d at 119. Quite apart from making bare conclusions in his opinion, the ALJ extensively chronicled the medical evidence that had been presented to him in the written record and at the hearing. (Tr. at 18-22.)

As previously set forth, substantial evidence exists to support the ALJ's decision. The ALJ noted that various treating physicians had repeatedly cleared Plaintiff to return to work or indicated she was capable of performing occupational or daily-living activities. (*Id.* at 19.) Additionally, the ALJ concluded the herniation did not support a finding of disability because it had been present since 1996 and did not adversely affect Plaintiff's work performance during the four subsequent years. (*Id.* at 21.) He further noted Planitiff's testimony regarding the nature of her past relevant work in concluding she is capable of performing her work as an administrative assistant or an accounts receivable clerk. (*Id.* at 82-83.) Thus, the ALJ's decision sufficiently set forth substantial evidence in support of his conclusion.

    **B.**  **Whether the ALJ Adequately Considered Plaintiff's Subjective Complaints of Pain**

Plaintiff next contends that the ALJ erred in failing to engage in a pain evaluation. (Pl.'s Br. at 8.) Statements about a claimant's pain or other symptoms do not alone establish that she is disabled, rather there must be medical signs and laboratory findings that show a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged. *See* 20 C.F.R. § 416.929(a). While there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself. *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984). The ALJ may not discount a claimant's testimony as to pain where it is reasonably supported by medical evidence, unless there is

9

medical evidence that expressly contradicts claimant's testimony. *See Mac v. Sullivan*, 811 F.Supp. 194 (E.D. Pa. 1993) (quoting *Atkins v. Bowen*, 690 F.Supp. 383, 389 (E.D. Pa 1988). In the present case, not only is there a lack of medical evidence that reasonably supports Plaintiff's testimony, substantial evidence exists to contradict Plaintiff's assertion that the pain is debilitating.

Although Plaintiff testified that she experiences pain in her neck and back (Tr. at 393), Plaintiff fails to point to specific medical evidence in support of her subjective complaints of pain. The ALJ considered all relevant clinical and testimonial evidence in evaluating these complaints. He observed that Plaintiff alleviated the pain through the use of over-the-counter medicine such as Extra Strength Tylenol. (*Id*. at 22, 371.)[3] He also noted Dr. Francky Merlin's conclusion that she could sit, stand, walk with an antalgic gait, hear, speak, and travel. (*Id*. at 332-334.) Furthermore, Dr. Chirls testified that any carpal tunnel syndrome or osteoporosis Plaintiff may have would not produce pain, (*id*. at 422), and that the source of her alleged back pain lacked neurological findings. (*Id*. at 451, 458.) Thus, the ALJ's refusal to accord much weight to Plaintiff's subjective complaints of pain is supported by substantial credible evidence.

      **C.**      **Whether the ALJ Adequately Determined Plaintiff's Residual Functional Capacity to Perform Light Work**

Finally, Plaintiff maintains that the ALJ erred by failing to consult a vocational expert or a treatise such as the *Dictionary of Occupational Titles* in determining Plaintiff's residual functional capacity to perform light work. Although the ALJ did not consult either a vocational expert or a treatise, such a consultation is not mandatory. *See* 20 C.F.R. § 416.960(b)(2)

---

[3] Although the record reflects that she has been prescribed various pain relievers in the past such as Naprosyn, Percocet, Ultram, Tylenol with codeine, (*id.* at 71, 75, 310, 324), Plaintiff apparently cannot tolerate their side effects and no longer takes them. (*Id.* at 221, 386.)

(providing that an expert *may* offer relevant evidence and the Dictionary of Occupational Titles *may* be used).  Where there is other sufficient evidence to support the ALJ's conclusion that a claimant is able to perform past relevant work, neither testimony of a vocational expert nor use of the *Dictionary of Occupational Titles* is required.  *Rivera v. Barnhart*, 239 F.Supp. 2d 413, 420-421 (D. Del. 2002) (citing *Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001) (holding that the testimony of a vocational expert is "not required at step four where the claimant retains the burden of proving she cannot perform her prior work")).

     Plaintiff bears the burden of proving she lacks the residual functional capacity to perform her past relevant work.  *Ferguson v. Schweiker*, 765 F.2d 31, 36 (3d Cir. 1985).  In determining her capacity to perform such work, the ALJ considered Plaintiff's long and steady employment, a fact that typically bolsters claimants' credibility when testifying that they cannot perform past relevant work.  Nevertheless, the ALJ reasonably concluded that such a presumption cannot be afforded in this matter because Plaintiff's orthopedic surgeon cleared her to return to work less than one week before she discontinued work.  (*Id*. at 22.)  Moreover, Dr. Chirls testified that Plaintiff can write and type over a period of time with the use of a wrist band and various breaks for rest.  (Tr. at 421-424.)  Dr. Chirls further noted that her carpal tunnel syndrome had not affected her grip, and her numbness had improved since the surgery on her transverse carpal ligament.  (*Id*. at 429.)  As previously discussed, several doctors opined that Plaintiff could return to her previous work, (*Id.* at 284, 309), and none opined that she was disabled.  In conclusion, there is substantial evidence to support the ALJ's decision that Plaintiff could perform her past relevant work.

## V. CONCLUSION

For the foregoing reasons, this Court finds that ALJ Muehlig's analysis was adequate and supported by substantial evidence. Therefore, this Court affirms the Commissioner's decision denying Disability Insurance Benefits to Plaintiff Annie J. Wannamaker.

                                                                             s/William J. Martini

**Dated: July 26, 2005**                                                           _____
                                                                           **WILLIAM J. MARTINI, U.S.D.J.**